IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DIAMONDBACK INDUSTRIES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| | § | |
| REPEAT PRECISION, LLC; NCS | § | CASE NO. 6:19-CV-00034-ADA |
| MULTISTAGE, LLC; NCS | § | |
| MULTISTAGE HOLDINGS, INC.; | § | |
| GARY MARTIN, GRANT MARTIN; | § | |
| and ROBERT NIPPER | § | |
| | § | |
| *Defendants*. | § | |

## DIAMONDBACK INDUSTRIES, INC.'S ANSWER TO DEFENDANT REPEAT PRECISION'S COUNTERCLAIM

Plaintiff/Counter-Defendant Diamondback Industries, Inc. ("Diamondback") hereby answers the counterclaim of Defendant/Counter-Plaintiff Repeat Precision, LLC ("Repeat Precision" or "RP") contained in Defendants' Joint Original Answer and Affirmative Defenses to Diamondback's Second Amended Complaint (Dkt. 73) as follows:

### Preliminary Statement and Brief Procedural Background

On February 4, 2019, Repeat Precision asserted numerous claims against Diamondback, including claims for both tortious interference with existing business relationships and tortious interference with prospective business relationships. Case No. 6:19-cv-00036-ADA (now consolidated with the above-styled "00034" matter), Dkt. 1 at 33-36 (¶¶ 135-149). In those allegations, Repeat Precision complained, in more general terms, about much of the same conduct it now alleges in its "new" counterclaim. For example, in its Original Complaint, RP specifically complained and alleged that "[u]pon information and belief, Diamondback has actually interfered with, or at least attempted to interfere with, [multiple] Repeat Precision customer relationships."

Case No. 6:19-cv-00036-ADA, Dkt. 1 at 34 (¶ 139). RP specifically complained about Diamondback's alleged interference with "prospective customer relationships, even when those relationships have not been memorialized in formal contracts." *Id.* at 34-35 (¶ 144). RP further complained that it "has many ongoing customer relationships" and "anticipated it would sell additional disposable setting tools to its [unnamed/unidentified] prior customers, many of whom have expressed an intent to continue purchasing disposable setting tools from Repeat Precision." *Id.* at 35 (¶ 145). And RP complained that it had "already lost sales of its disposable setting tools, and will continue to lose sales until Diamondback's conduct is stopped." *Id.* at 36 (¶ 148).

On February 25, 2019, after the Court had consolidated the two cases, Diamondback timely filed an answer denying those allegations. Case No. 6:19-cv-00034-ADA, Dkt. 25 at 13-14 (¶¶ 135-149) (denying allegations, while highlighting the fact that Repeat Precision had failed to identify a so-called "Customer A" and explaining that "Diamondback lacks sufficient information to confirm or deny the extent of RP's customer relationships").

On April 5, 2019, the Court issued a Scheduling Order, setting a deadline of June 28, 2019, for the parties to file any motions for leave to amend pleadings. Dkt. 42. The Court did *not* provide any date or deadline by which the Parties were permitted to amend their pleadings *without* leave of Court. *See generally* Dkt. 42.

During a phone hearing on May 20, 2019, the Court granted Diamondback's request for leave of Court to file its Second Amended Complaint and directed Diamondback to file that amended pleading by June 4, 2019. At the same time, the Court directed Defendants to file a detailed answer by June 25, 2019. During a detailed discussion of those deadlines at the hearing, Defendants did not request, and the Court did not grant, leave for Defendants to add new claims. On June 4, 2019, Diamondback timely filed its Second Amended Complaint. Dkt. 61.

By email of June 17, 2019, Gary Martin's counsel requested, on behalf of all Defendants, a two-week extension "to answer [Diamondback's] 2nd Amended Complaint." On that same day, Diamondback's counsel agreed to the request. On June 20, 2019, the Court entered an Agreed Amended Scheduling Order, directing Defendants to "answer Plaintiff's amended complaint" by July 9, 2019, and extending the parties' deadline for "motions to amend pleadings" until September 27, 2019. Dkt. 67.

On July 9, 2019, Defendants filed their Answer. Dkt. 73. However, RP also asserted a claim for tortious interference with prospective relationships – which appears to complain about the same conduct cited in RP's original claim for tortious interference with prospective relationships. More specifically, RP's July 9, 2019, pleading asserted a "counterclaim against Diamondback … for tortious interference with prospective business relationships" in which it recited many of the same facts recited in its original counterclaims for tortious interference -- now supplemented with paraphrases (or, in some instances, distortions) of recent deposition testimony and a few additional details. *Compare* RP's original claim for tortious interference with prospective relationships (Case No. 6:19-cv-00036-ADA, Dkt. 1 at ¶¶ 9-13, 27, 32, 135-149) *with* RP's "new" claim for tortious interference with prospective relationships (Case No. 6:19-cv-00034-ADA, Dkt. 73 at ¶¶ 1-6, 18-24). RP filed this new counterclaim even though it (a) had already asserted two claims for tortious interference, (b) did not obtain (or even request) leave of Court to add new claims, and (c) never conferred with Diamondback about adding new claims.

Out of an abundance of caution, Diamondback again denies that it tortiously interfered with any of RP's prospective relationships and reserves all rights to challenge the propriety of this counterclaim.

**Repeat Precision's Counterclaim**

No response is required to the opening, unnumbered paragraph. To the extent necessary, Diamondback admits that RP previously asserted claims against Diamondback and that it now purports to assert an additional counterclaim. Otherwise, denied.

### I.  Parties

1.  Diamondback admits the allegations in paragraph 1.

2.  Diamondback admits the allegations in paragraph 2.

### II.  Jurisdiction and Venue

3.  Diamondback admits the allegations in paragraph 3.

4.  Diamondback admits the allegations in paragraph 4.

### III.  Factual Background

5.  Diamondback admits that it entered into a Patent License Agreement with RP on March 16, 2018. Diamondback denies that RP acquired "the" exclusive right to do anything to the exclusion of Diamondback. Diamondback admits that the agreement conveyed to RP certain rights to the exclusion of other third parties. Diamondback admits that a copy of the agreement (not fully executed) was attached as Exh. 4 to Diamondback's Original Complaint. Diamondback lacks knowledge or information sufficient to form a belief about the truth of RP's allegations regarding the timing of its efforts to create marketing materials. Diamondback admits that it may have provided some feedback regarding some of those materials but denies that it reviewed, commented on, or approved all such materials. Diamondback admits the remaining allegations of Paragraph 5.

6.  Diamondback denies that the drafts of the agreement or the drafts of proposed amendments thereto are relevant. Diamondback admits that the parties discussed, and ultimately agreed to, an amended definition of Licensed Products that would have permitted RP to sell a

stand-alone disposable setting tool and agreed to language relating to a right of first refusal (see Exh. 6 to Diamondback's Original Complaint). Diamondback otherwise denies RP's allegations about and characterizations of the amended definition of Licensed Products and denies that the Right of First Refusal is valid or enforceable, because that ROFR was previously terminated by written agreement of the parties. Except as expressly admitted, denied.

7. Diamondback lacks knowledge or information sufficient to form a belief about the truth of RP's allegations in Paragraph 7. On that basis, denied.

8. Diamondback admits that it never entered into any sort of formal distribution agreement with Hunting-Titan and never made any final decisions in that regard. Diamondback also admits that Hunting-Titan does not purchase disposable setting tools from Diamondback. Except as expressly admitted, denied.

9. Diamondback lacks knowledge or information sufficient to form a belief about the truth of RP's allegations in Paragraph 9. On that basis, denied. Further, based on RP's own pleadings (*see, e.g.*, Paragraph 7), any such negotiations were ongoing before June 2018 – at least back to May 2018.

10. Diamondback lacks knowledge or information sufficient to form a belief about the truth of RP's allegations in Paragraph 10. On that basis, denied.

11. Diamondback lacks knowledge or information sufficient to form a belief about the truth of RP's allegations in Paragraph 11. On that basis, denied. In fact, Diamondback's "knowledge and information" on this subject is complicated by the fact that various Defendants provided contradictory information to Diamondback. For example, Gary Martin represented that RP had a deal to sell 12,000 tools per month to Hunting-Titan, while Robert Nipper insisted that RP did *not* have a deal with Hunting-Titan. Diamondback denies RP's speculation about the

alleged "strong probability" regarding a potential business relationship and denies that it "interfered" – tortiously or otherwise.

12. Diamondback denies the allegations in paragraph 12 of Repeat Precision's Counterclaim.

13. Diamondback denies the first allegation/sentence in paragraph 13 because it does not specify a date or time period and because Diamondback certainly did not know all of the details or the full extent of any communications between RP and Hunting-Titan. Diamondback admits that in November or December 2018, it shared with Hunting-Titan some of the information contained in its publicly available pleadings. Diamondback denies that it had the referenced mid-August 2018 conversation with Hunting-Titan. To the extent Mr. Drury suggested otherwise in his deposition, he apparently had his dates confused. Except as specifically admitted, Diamondback denies the remaining allegations in paragraph 13.

14. Diamondback admits that it was engaged in good faith negotiations with NCS during August 2018 and fully expected and hoped that Defendants were likewise acting in good faith with respect to the potential acquisition of Diamondback. Diamondback further admits that it accurately and truthfully conveyed its understanding about the limited extent to which Hunting-Titan was intending to enter into the power charge business. Diamondback denies that it tried to "spin" anything and denies the remaining allegations of paragraph 14.

15. Diamondback admits that it withheld some but not all of its trade secrets from the Secure Data Room. Diamondback denies the remaining allegations of paragraph 15.

16. Diamondback denies the allegations of paragraph 16.

17. Diamondback admits that it was aware that RP had some communications at some point in time with Schlumberger but denies that it was aware of the details or the extent of such communications. Diamondback denies the remaining allegations of paragraph 17.

### IV. Counterclaim – Tortious Interference with Prospective Business Relationships

18. No answer is required. To the extent necessary, denied.

19. The allegations of paragraph 19 repeat or repackage the allegations of paragraphs 7-16. To that extent, see above answers to paragraphs 7-16, incorporated by referenced. Except as expressly admitted, the allegations are denied.

20. Diamondback denies the allegations of paragraph 21.

21. Diamondback admits that Derrek Drury is authorized to act on behalf of Diamondback. Except as expressly admitted, the allegations are denied.

22. Diamondback denies the allegations of paragraph 22.

23. Diamondback denies the allegations of paragraph 23.

24. Diamondback admits that RP is apparently seeking some unspecified amount of damages. Except as expressly admitted, the allegations are denied.

25. Diamondback admits that it was aware that RP had some communications at some point in time with Schlumberger but denies that it was aware of the details or the extent of such communications. Diamondback denies the remaining allegations of paragraph 25.

### AFFIRMATIVE DEFENSES

In addition to the denials set forth above, Diamondback asserts the following affirmative defenses and reserves the right to assert additional affirmative defenses as they become known through discovery in this matter.

1.     RP's counterclaims fail to state a claim against Diamondback upon which relief can be granted.

2.     RP's counterclaims fail, in whole or in part, because RP assumed the risk of having to compete against Diamondback when it failed to secure ownership or an assignment of Diamondback's intellectual property.

3.     RP's counterclaims fail, in whole or in part, because RP fails to identify any independently tortious conduct or underlying tortious conduct.

4.     RP's counterclaims are barred, in whole or in part, by the equitable doctrines of estoppel, waiver, acquiescence, and unclean hands.

5.     RP's counterclaims are barred, in whole or in part, by its own fraud.

6.     RP's counterclaims fail, in whole or in part, because Diamondback retained substantial rights in and to the '035 Patent when it entered in to the Patent License and Amended Patent License, including the right to practice its own patents and the right to compete in the relevant market(s).

7.     RP's counterclaims are barred, in whole or in part, to the extent RP violated or was in violation of any of its confidentiality obligations or other contractual obligations -- under the Patent License, Amended Patent License, the LOI, or otherwise – by its dealings with Hunting-Titan and/or Schlumberger or to the extent it failed to disclose such dealings in a manner required by one or more of its contractual obligations or in a manner that was inconsistent with its obligations to operate in good faith.

8.     RP's counterclaims are barred, in whole or in part, to the extent RP was conspiring with one or more of the other defendants to defraud Diamondback (e.g., by using Diamondback's

confidential, trade secret, or proprietary information to try to steal one of Diamondback's best customers).

9. RP's counterclaims are barred, in whole or in part, because RP was acting in bad faith by pursuing business opportunities with Hunting-Titan and/or Schlumberger in a manner that was inconsistent with the parties' agreements and/or inconsistent with their mutual intentions under those agreements.

10. RP's counterclaims are barred, in whole or in part, to the extent RP consented to the conduct in question.

11. RP's counterclaims are barred, in whole or in part, by the doctrines of justification and excuse.

12. RP's counterclaims are barred, in whole or in part, by RP's own breach of the parties' various contracts.

13. RP's counterclaims are barred, in whole or in part, by RP's lack of injury and/or damages.

14. To the extent the Patent License and/or the Amended Patent License are still valid and enforceable (despite Diamondback's claims that they are void, should be voided, have been terminated, or should be terminated), RP's counterclaims are barred, in whole or in part, and its damages are limited, because of license language limiting damages and license language regarding merger.

15. RP's counterclaim is procedurally barred, in whole or in part, because it was filed without leave of Court.

16. Diamondback further incorporates by reference all affirmative defenses included in its previous answer to RP's claim for tortious interference with prospective relationships. *See* Dkt. 25 at 15-17.

## **PRAYER**

No answer is required to RP's prayer. To the extent necessary, Diamondback denies the allegations contained in RP's prayer and denies that RP is entitled to any relief whatsoever. Diamondback also requests such other relief as this Court may deem just and proper.

Dated: September 9, 2019

Respectfully submitted,

 /s/ Decker A. Cammack
Decker A. Cammack (Lead Counsel)
Texas Bar No. 24036311
dcammack@whitakerchalk.com

David A. Skeels
Texas Bar No. 24041925
dskeels@whitakerchalk.com

**WHITAKER CHALK SWINDLE
  & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501

J. Mitchell Little
Texas Bar No. 24043788
Mitch.little@solidcounsel.com

**SCHEEF & STONE, L.L.P.**
2600 Network Blvd., Ste. 400
Frisco, Texas 75034
Phone: (214) 472-2100
Fax: (214) 472-2150

John P. Palmer
Texas Bar No. 15430600
palmer@namanhowell.com
**NAMAN, HOWELL, SMITH & LEE, PLLC**
400 Austin Ave., Suite 800
P.O. Box 1470
Waco, Texas 76703
Phone: (254) 755-4100
Fax: (254) 754-6331
*Counsel for Diamondback Industries, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of this document is being served through e-filing and via email on this 9th day of September, 2019 to all counsel who have appeared in this matter, including:

W. Scott Hastings
shastings@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile
ATTORNEYS FOR REPEAT PRECISION, LLC

                                                    */s/ Decker A. Cammack*
                                                    Decker A. Cammack

DM#418665